## UNITED STATES v. 2.74 ACRES OF LAND IN WILLIAMSON COUNTY, ILL., et al.
### Civ. No. 140.

District Court, E. D. Illinois.
Feb. 3, 1940.

Arthur Roe, U. S. Atty., of Danville, Ill., G. R. Schwarz, Sp. Atty., Department of Justice, of Jerseyville, Ill., and Jacob N. Wasserman and Leland L. Yost, Attys., Department of Justice, both of Washington, D. C., for plaintiff.

George W. Dowell, of DuQuoin, Ill., for defendants.

WHAM, District Judge.

This case is before the court upon defendants' motion to dismiss the petition for condemnation filed by the United States of America by which it seeks to condemn four separate tracts of land totalling 2.74 acres, each of which tracts is now being used for cemetery purposes, and seeks an order for the removal of the bodies therefrom that the said land may be inundated by the waters of Crab Orchard Creek Reservoir. The petition is filed and condemnation sought under the provisions of Title III of the Bankhead-Jones Farm Tenant Act (hereinafter referred to as the Bankhead-Jones Act), approved July 22, 1937 (50 Stat. 522, 7 U.S.C.A. §§ 1000–1029), and the provisions of the Act of Congress approved August 1, 1888 (25 Stat. 357, 40 U.S.C.A. § 257).

The grounds of the motion to dismiss the petition are:

(1) That the legislation under which the condemnation is sought does not authorize the acquisition of the lands in question.

(2) The legislation relied upon is unconstitutional in that it delegates legislative powers to the Secretary of Agriculture.

(3) The acquisition, invasion and use of said lands now being used as cemeteries and the removal of the bodies therefrom will violate civil and criminal laws of the State of Illinois and will constitute an encroachment upon the powers reserved to the state by the Tenth Amendment.

(4) That the court is without power or jurisdiction to authorize, by its order, the removal of the bodies interred in said cemeteries or to establish the rules and conditions of such removals.

(5) The Act of Congress approved August 7, 1939, 53 Stat. 1244, which authorizes the Soil Conservation Service, Department of Agriculture, to remove the bodies buried within the area of the Crab Orchard Creek Dam Project prohibits removal of the bodies as sought through the petition.

The allegations of the petition show that the cemeteries in question lie in the midst of a large area of land heretofore acquired by the United States for use in what is known as the Crab Orchard Creek Project, Williamson County, Illinois, for purposes, among others, of flood control, reforestation, soil conservation and prevention of soil erosion. The constitutionality of the laws under which said lands were acquired, the legality of the authority as exercised thereunder and the legality of such acquisition has heretofore been considered and sustained by this court. United States v. Eighty Acres of Land, D.C., 26 F.Supp. 315; United States v. Sixty Acres of Land, D.C., 28 F.Supp. 368.

The allegations of the petition further show that unless the parcels of land here sought to be condemned are acquired with the right to remove the bodies buried therein so that said lands may be inundated by the waters of the reservoir which will be formed by closing the large dam already constructed and completed as part of said Crab Orchard Creek Project the purpose of the project will be defeated and the intended use of the lands heretofore acquired interfered with and prevented; that under the authority of said Bankhead-Jones Act the Secretary of Agriculture (hereinafter referred to as "the Secretary") has taken all the steps set forth in detail in said petition required to procure the institution of these proceedings for the acquisition of said cemetery lands by condemnation for purposes of said Act; that

the Secretary has determined that said lands are necessary and has selected them for purposes of said Act, namely, to correct maladjustments in land use; to assist in controlling soil erosion; to provide for the reforestation of said lands; to preserve natural resources; to aid in flood control; to prevent impairment of dams and reservoirs; to conserve surface and subsurface moisture; to protect the watersheds of navigable streams; and to protect the public lands, health, safety and welfare.

An examination of the Bankhead-Jones Act discloses that by its provisions (7 U.S. C.A. §§ 1010 and 1011) the Secretary is authorized and directed to develop a program of land conservation and land utilization for the very purposes set forth in the petition herein as the purposes for which the land herein sought to be condemned is being acquired and that the Secretary is authorized to acquire for such purposes by purchase, gift or devise, submarginal land and land not primarily suitable for cultivation.

It is noticed at once that the uses and purposes for which the lands are being sought here are the same in large measure as the purposes of the Crab Orchard Creek Project which were held by this court in United States v. Eighty Acres of Land, supra, to be proper and lawful public uses, the accomplishment of which will warrant the exercise by the government of its power of eminent domain. Act of Congress approved August 1, 1888, 25 Stat. 357, 40 U.S.C.A. § 257.

■ The land which is here sought to be acquired is obviously not suitable for cultivation, and statutory authority to acquire land for a public use by purchase is authority to acquire by condemnation under the sovereign power of eminent domain and the provisions of the Act of Congress approved August 1, 1888 (25 Stat. 357, 40 U.S.C.A. § 257); Hanson Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809; United States v. Crary, D.C., 1 F. Supp. 406.

■■ That the acquisition of the land here in question is necessary to correct a maladjustment of land seems obvious under the allegations of the petition, all of which, if well pleaded, are admitted by the motion to dismiss, that such acquisition is absolutely essential to plaintiff's use for their intended purposes of thousands of acres of land now owned by the plaintiff.

Then, too, the purposes of the Crab Orchard Creek Project and the purposes of the authority conferred by the Bankhead-Jones Act to acquire land for the uses set forth in the petition being substantially identical, as hereinbefore mentioned, it would seem to follow that though the acquisition of the land here sought is intended to aid the Crab Orchard Creek Project it comes within the Congressional purpose and intent in the enactment of the Bankhead-Jones Act.

■ Is the authority and right of the plaintiff to acquire the land here in question by eminent domain affected by the fact that it is being used for cemetery purposes and is already devoted to a public use? That question was considered by this court and answered in the negative in the case of United States v. Sixty Acres of Land, supra. After careful reconsideration I adhere to my views expressed in the opinion in that case. The fact that the plaintiff's authority here is given by a different law than that which gave the authority in the other case is of no consequence as the same principle is involved. By each law the plaintiff is authorized to acquire land by condemnation for a public purpose of the federal government. The rules governing the power of the national government to acquire for a federal public use by condemnation land already devoted to a public use under the laws of a state are the same regardless of the particular statute under which the government may be proceeding, unless some limitation, express or implied, appears in the statute itself.

One ground is here urged against the power of the federal government to acquire for a different public use land already devoted to a public use as a cemetery that was not considered in United States v. Sixty Acres of Land, supra. Defendants say that such acquisition and use encroaches upon the police powers of the State of Illinois as asserted by its valid and existing civil and criminal laws relating to cemeteries; that such powers were not only never given up by the states to the federal government but were specifically reserved to the states by the Tenth Amendment to the federal Constitution; and that to permit the federal government to exercise its power of eminent domain to the extent of acquiring lands already being used for public cemeteries, and removing the bodies therefrom to another place of burial, would be an unconstitutional invasion of

the state's police power by the federal government and would authorize the agents of the federal government to commit criminal acts against the laws of Illinois.

The principal case relied upon by defendants in support of their contention that the federal government may not enact valid legislation which invades, though incidentally, a field of action reserved to the states by the Tenth Amendment is United States v. Carolene Products Co., D.C., 7 F.Supp. 500. In that case the validity of the United States Filled Milk Act, 21 U.S.C.A. §§ 61–63, was questioned. That Act prohibited the shipment in interstate commerce of "filled milk", as defined in the Act, and had been enacted under the federal power to regulate interstate commerce. A criminal information was filed by the United States against the defendant for a violation of the Act. The District Court sustained a demurrer to the information, and declared the statute unconstitutional in that it constituted an attempt on the part of Congress to exercise police power over local affairs under the guise of regulating interstate commerce and thereby constituted an invasion of the powers reserved to the states by the Tenth Amendment. But the application of the principles through which the Filled Milk Act was held unconstitutional by the District Court failed to receive the approval of the Supreme Court in United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234, wherein the District Court was reversed and the constitutionality of the Filled Milk Act was expressly upheld without mention of the Tenth Amendment. The Filled Milk Act was likewise upheld by the Seventh Circuit Court of Appeals in Carolene Products Co. v. Evaporated Milk Ass'n, 93 F.2d 202, in which the court declared, in effect, that it can constitute no unconstitutional encroachment upon the reserved police powers of the states for Congress to enact legislation within its constitutional jurisdiction which may incidentally invade the field of state police power.

■ It is when federal legislation attempts to confer power upon the national government that is not within the express or implied powers given by the Constitution that the legislation becomes vulnerable to the Tenth Amendment. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. But the Tenth Amendment is no limitation on the powers expressly or impliedly granted to the federal government. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688; Wright v. Union Central Insurance Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; Hamilton v. Kentucky Distillers & Warehouse Co., 251 U.S. 146, 40 S.Ct. 106, 108, 64 L.Ed. 194. In the last mentioned case the Supreme Court said: "That the United States lacks the police power, and that this was reserved to the states by the Tenth Amendment, is true. But it is none the less true that when the United States exerts any of the powers conferred upon it by the Constitution, no valid objection can be based upon the fact that such exercise may be attended by the same incidents which attend the exercise by a state of its police power, or that it may tend to accomplish a similar purpose."

■ In seeking authority to remove the bodies from the cemeteries here, in an orderly fashion to be approved by the court, to enable plaintiff to exercise valid federal legislative authority, plaintiff is not seeking authority unlawfully to encroach upon or invade the police powers of the state relating to the care and protection of cemeteries or to violate the laws enacted pursuant thereto, but only seeks authority to do that which is impliedly authorized by such valid federal legislation as being necessary and incidental to the achievement of its purposes.

The criminal laws of Illinois forbid the unauthorized disinterment and removal of human bodies from cemeteries or places of interment and the malicious defacement or destruction of vaults, tombs, monuments, fences and shrubs therein. Chapter 38, sections 354, 355, Smith-Hurd Ill.Rev.Stat. It follows as day the night that a lawfully authorized removal of bodies and of the markers and monuments, not for a malicious purpose but to prevent their destruction through the use of the land for other lawful purposes authorized by valid federal legislation, cannot be a violation of said criminal laws. It is such lawful authority the plaintiff here seeks and not authority to violate the civil and criminal laws of the state.

The plaintiff does not seek by its petition to force the next of kin to remove the bodies of their kin from the cemeteries but seeks to protect in them that right for a reasonable time in the order which is sought authorizing the removal of the

bodies by the plaintiff under valid federal legislation and for lawful purposes.

That the Congress has had in mind the actual situation created by the cemeteries in the midst of an area acquired under legislative authority for uses in connection with the Crab Orchard Creek Project and that it is the Congressional purpose and intent that said cemeteries shall be acquired and cease to be used for burial purposes and the bodies now therein be removed is shown by the enactment of the Act of Congress approved August 7, 1939, authorizing the Soil Conservation Service, Department of Agriculture, to remove the bodies buried within the area of said project. Though the petition does not allege that the conditions of said Act have actually been complied with, no authority appears to be sought which is forbidden by or which may not be shown by evidence to be within the scope, purpose and authority of said Act.

As to the authority and jurisdiction of the court to grant an order for the removal of the bodies upon conditions set forth in such order it would seem that though, after condemnation of the cemetery sites, such order would not be necessary to authorize and empower the agents of the Soil Conservation Service to remove the bodies, the authority having been conferred by specific legislation, a proper order would be within the jurisdiction of the court to interpret the legislation and declare and protect the rights existing and arising thereunder and under other applicable legislation, if any.

Is the Bankhead-Jones Act unconstitutional because it delegates legislative authority to the Secretary? Section 55 of the Act (7 U.S.C.A. § 1029) provides that the invalidity of one provision of the Act shall not affect the other provisions. Sections 31 and 32 (7 U.S.C.A. §§ 1010 and 1011), the validity of which alone are here involved, authorize the Secretary to "develop a program of land conservation and * * * utilization" for specific purposes therein mentioned and "to effectuate the program" by doing certain specific things, among which is the acquisition of lands and interests in lands and the making of such rules and regulations as he deems necessary to prevent trespasses and regulate the use and occupancy of the property acquired in order to conserve and utilize it for the purposes of the legislation. The bare statement of the authority thus conferred upon the Secretary by said sections is sufficient to demonstrate that such authority is administrative rather than legislative and, therefore, not an unconstitutional delegation of power. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441.

Defendants' motion to dismiss the plaintiff's petition must be and is hereby denied.